[No. G021244. Fourth Dist., Div. Three. Feb. 25, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM RANGEL, Defendant and Appellant.

## COUNSEL

Joyce Meisner Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Crystal L. Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RYLAARSDAM, J.**—In this case, we hold a trial court has discretion to order a diagnostic evaluation under Welfare and Institutions Code section 707.2 (all further statutory references are to the Welfare and Institutions Code unless otherwise indicated) where the indicated sentence plus the defendant's age do not exceed 25 years. We reject the prosecution's contention that, in order to determine eligibility for a study, the court may consider only the greatest term which can be imposed rather than the actual term the court intends to impose.

Since the trial court accepted the refusal of the California Youth Authority (CYA) to conduct an evaluation of defendant William Rangel and sentenced him to state prison without the benefit of such a study, we remand the case for resentencing.

FACTS

In 1996, a jury found defendant guilty of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)) and assault with a firearm (Pen. Code, § 245, subd. (a)(2)), and returned true findings on allegations he personally used a firearm (Pen. Code, § 12022.5, subd. (a)), and inflicted great bodily injury (Pen. Code, § 12022.7) as to each count. At the time of the crime, defendant was 17 years old; by the time of his conviction he was 18.

During a posttrial hearing, the court considered the question whether to send defendant to the CYA for a diagnostic evaluation. The court indicated it might impose a prison sentence of seven years, and continued the matter to allow the parties to research whether section 1732.6 prohibited commitment to the CYA. At a second posttrial hearing, the parties agreed that, if the court imposed a seven-year sentence, section 1732.6 would not bar a CYA commitment. The court referred defendant to the CYA.

A court clerk prepared a document entitled "Report—Indeterminate Sentence, or Other Sentence Choice." The document erroneously stated defendant was convicted of attempted murder and assault with a semiautomatic weapon. The CYA sent the court a letter, in part, concluding, a "review[]" of "the documents submitted on this case" reflected "the defendant is statutorily ineligible for commitment per [section] 1732.6."

The court held another hearing, and after noting receipt of the CYA's letter, concluded "it would be fruitless to try to do anything" other than

sentence defendant. Defense counsel objected to the CYA's refusal to evaluate defendant, but agreed with the court's observation regarding the futility of other options. The court imposed the previously indicated seven-year sentence. But the court expressed the following comments concerning the CYA's refusal to perform an evaluation: "[I]f you add the seven years to the seventeen, he would be within the time frames that the [CYA] has to rehabilitate a defendant. [¶] And I just want to make a record about that should there be a request to have appellate review. [¶] And my judgment is that the defendant should have received a diagnostic evaluation prior to the time that he was sentenced in view of my reading of the appropriate sections of the Welfare and Institutions Code."

DISCUSSION

Given the court's willingness to obtain an amenability evaluation, defendant contends the CYA's refusal to conduct a study and the court's failure to further investigate the matter requires a remand for a new sentencing hearing. The Attorney General counters that since the maximum potential sentence defendant could have received in this case exceeded 15 years, an evaluation was not permitted.

Before 1995, section 707.2 declared, "[p]rior to sentence, . . . [n]o minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison" without first being "remanded to the custody of the [CYA] for evaluation and report" concerning "his amenability to training and treatment . . . ." (Stats. 1982, ch. 1105, § 1, p. 4009.) The evaluation requirement applied even where the defendant had been convicted of a crime which rendered him ineligible for a CYA commitment. (*People* v. *Marsh* (1984) 36 Cal.3d 134, 142 [202 Cal.Rptr. 92, 679 P.2d 1033]; *People* v. *Camacho* (1993) 19 Cal.App.4th 1737, 1748-1749 [24 Cal.Rptr.2d 286].)

Since then, two significant legislative changes have been made to section 707.2. First, in 1994, the Legislature limited the evaluation requirement to only a "minor . . . under the age of 16 years when he or she committed any criminal offense." (Stats. 1994, ch. 449, § 1.) Thus, for a minor age 16 or older when he or she commits a crime the trial court's request for an evaluation is now a discretionary decision. Second, in 1995, the Legislature added subdivision (b) which states, "[t]his section shall not apply where commitment to the [CYA] is prohibited pursuant to Section 1732.6." (Stats. 1995, ch. 343, § 1.) The latter statute declares "[n]o minor shall be committed to the [CYA] when he or she is convicted in a criminal action for an

offense described in Section 667.5 or subdivision (c) of Section 1192.7 of the Penal Code and is sentenced to incarceration for life, an indeterminate period to life, or a determinate period of years such that the maximum number of years of potential confinement when added to the minor's age would exceed 25 years . . . ." (§ 1732.6.)

The CYA's refusal to conduct the diagnostic evaluation requested by the court can be upheld only if that agency correctly concluded section 1732.6 precludes defendant's commitment to it. The jury's findings on the firearm and great bodily injury enhancements rendered his crimes both violent and serious felonies (see Pen. Code, §§ 667.5, subd. (c)(8), 1192.7, subd. (c)), thereby satisfying section 1732.6's first requirement. But to bar an evaluation, defendant had to receive a sentence which, when added to his age, exceeded 25 years. (§ 1732.6.)

■ When interpreting a statute, a court first looks to the words used to decide if the section is clear and unambiguous. If the language is susceptible to more than one reasonable construction, the court must consider, among other factors, the legislative objectives of the statute, its legislative history, public policy, and the overall statutory scheme of which the section is a part. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].) Statutes which relate to the same subject matter should be read together and harmonized if possible. (*People* v. *Squier* (1993) 15 Cal.App.4th 235, 240-241 [18 Cal.Rptr.2d 536].)

■ Sections 707.2 and 1732.6 are not clear. The former statute expressly applies "[p]rior to sentence" (§ 707.2, subd. (a)), while the latter statute focuses on the sentence actually imposed (§ 1732.6). Also, in section 1732.6, it is not clear what is meant by the phrase "the maximum number of years of potential confinement" in cases where a minor receives a determinate sentence.

The purpose for remanding someone to the CYA under section 707.2 is to determine the person's "amenability to [the] training and treatment offered by the . . . Youth Authority." (§ 707.2, subd. (a).) In *Marsh*, the Supreme Court considered whether a section 707.2 evaluation was required where the minor appeared ineligible for commitment to the CYA. In finding the evaluation necessary, the court noted that, as originally enacted, section 707.2 applied only to persons "eligible" for a CYA commitment, but the Legislature later amended the statute to delete the restriction. (*People* v. *Marsh, supra,* 36 Cal.3d at pp. 141-142.) *Marsh* explained that, "[g]iven the trial court's power under [Penal Code] section 1385 . . . such an evaluation

would not be futile. It would also be useful to a court in determining whether to exercise the discretion granted it under . . . section 1731.5" which, in part, authorizes housing youthful offenders committed to the Department of Corrections at the CYA. (*Id.* at p. 142.)

The recent changes to section 707.2 reflect a legislative intent to limit diagnostic evaluations by the CYA. (See *Review of Selected 1994 California Legislation* (1995) 26 Pacific L.J. 202, 655-657.) Also, as recently amended, section 1731.5 would be of no assistance to defendant since housing transfers between state prison and the CYA under that statute are now limited to "person[s] under the age of 18." (§ 1731.5, subd. (c).) But the Legislature did not entirely eliminate evaluations for minors who are presumptively ineligible for a CYA commitment, and an evaluation under section 707.2 can still be of assistance to the court in determining the defendant's sentence.

The question remains whether section 1732.6 precludes a diagnostic evaluation under section 707.2 in this case. Where a defendant is subject to a sentence of life or an indeterminate period to life, the denial of an evaluation appears to be automatic. But defendant's crimes subjected him to a determinate sentence. The trial court found section 707.2 applied by calculating a nonbinding indicated sentence and adding that figure to defendant's age when he committed the crimes.

Although convicted at age 18, defendant was 17 years old when he committed the present crimes. Before the 1994 amendment, courts interpreted section 707.2 as applying to "not only persons who are sentenced prior to their 18th birthday but also offenders who committed the offense prior to their 18th birthday, but are older at the time of sentencing so long as they are within the age of persons subject to training and treatment by the Youth Authority." (*People* v. *Black* (1982) 32 Cal.3d 1, 4 [184 Cal.Rptr. 454, 648 P.2d 104]; see also *People* v. *Bustos* (1994) 23 Cal.App.4th 1747, 1755-1756 [29 Cal.Rptr.2d 112].) The 1994 amendment reduced the age for a mandatory evaluation, but nothing in it suggested the Legislature intended to change the judicial construction applying section 707.2 to persons over 18 at the time of sentencing. Section 1732.6 refers to "the minor's age" without indicating whether it applies to the offender's age when committing the crime or the offender's age when sentenced. Since the focus in this case is defendant's entitlement to a diagnostic evaluation, the trial court properly employed his age when committing the crimes rather than his age when convicted.

The prosecution does not object to using the defendant's age at the time of the offense, but argues the court must add the greatest possible sentence which can be imposed for the crime to the defendant's age to ascertain his or her eligibility for an evaluation. In this case the greatest possible sentence exceeds 15 years (5½ years for attempted manslaughter, plus 10 years for the firearm enhancement). Under the prosecution's approach, this sentence plus defendant's age when he committed the crimes, would render a section 707.2 evaluation inapplicable.

The trial court's approach was correct. ▮ When interpreting a statute, courts must endeavor to give significance to each word, and thereby avoid treating some words as surplusage. (*People* v. *Black, supra,* 32 Cal.3d at p. 5.) ▮ Section 1732.6 applies to a sentence for "a determinate period of years such that the maximum number of years of potential confinement when added to the minor's age would exceed 25 years." The Attorney General's interpretation of section 1732.6 focuses solely on the phrase "maximum number of years of potential confinement," and ignores the statute's introductory phrase. Had the Legislature intended courts to calculate the applicable sentence as the Attorney General suggests, it could have simply referred to the maximum sentence authorized for an offense. Applying the entire phrase contained in section 1732.6 in the context of determining whether a defendant is eligible for commitment to the CYA under section 707.2, a court should initially calculate an indicated sentence and use that figure in making the calculation required by section 1732.6.

The trial court properly determined defendant was eligible for a diagnostic evaluation by the CYA. While the CYA failed to complete the required evaluation, it is not clear what documents the CYA reviewed in finding defendant ineligible for an evaluation. There is a distinct possibility it relied on the erroneous information contained in the report of indeterminate sentence prepared by the clerk. The record also suggests both the court and counsel were unaware of the errors contained in that document. Under these circumstances, the proper procedure is to reverse defendant's sentence with directions to again remand the case to the CYA for an evaluation with the appropriate documentation, including a copy of this opinion.

## DISPOSITION

The convictions are affirmed. The sentence is vacated and the case remanded to the superior court with directions to again remand the case to

the CYA with directions to perform a diagnostic evaluation of defendant under section 707.2.

Crosby, Acting P. J., and Bedsworth, J., concurred.